My colleague has been gracious enough to give me two minutes of his argument, so I would like to use eight minutes here and save four for rebuttal. The federal kidnapping statute requires that an abduction must be for ransom or reward or otherwise, which the Supreme Court has explicitly held to mean some benefit to the accused. Over objection here, however, the trial court refused to instruct on the statutory and indicted element of the offense. The question now before this court is whether that error could possibly have been harmless beyond a reasonable doubt. As an initial matter, this is the first case, at least that I have found, where this issue is presented exactly this way. Where over objection, a trial court refused to instruct on an element of the offense, ransom or reward or otherwise. While there is some divided commentary in dicta from other circuits, there is absolutely no other case where over objection, the district court refused to instruct on this element of the offense. Kennedy If we went along here, we would be overruling, would we, the Guayne, G-W-A-Y-N-E case, Guayne? I think it's Guayne. I'm not sure how to pronounce it. I think it's G-A-W-N-E. Guayne is actually different. In Guayne, what happened was the indictment alleged a very, very specific purpose for the abduction, which was that the alleged kidnapper kidnapped Edith Gresham for the purpose of taking her interstate for some specific purpose. And then on appeal, the defendant challenged the sufficiency of the evidence on that element. The Ninth Circuit said, well, all that extra, it really isn't an element. But they didn't say that ransom or reward or otherwise is not an element. In fact, they specifically said, this does not mean that ransom or reward or otherwise Kennedy Otherwise, the purpose of the kidnap was surpluses, and quote, need not be proved. Guayne Well, but they also said this does not mean that ransom or reward or otherwise is mere surpluses. The word to be emphasized is held. That's what the court said. So, I mean, I agree with you that it comes close, but it doesn't say that you can't, that you don't have to instruct on it. And to the extent that that is the reading of Guayne, first of all, that directly conflicts with the Supreme Court's decision in Gooch, which was very clear that there must be a showing of some benefit to the accused. And it also conflicts with this Court's case of United States v. Ed City, where the court adopted the D.C. Circus holding in Robinson, identifying as three distinct elements of kidnapping, the second being the holding, and the third being ransom or reward or otherwise. Well, okay, in this you had two trials here, correct? The first trial was a hung jury, and then the second trial there was a conviction. And so the judge, it was the same judge, and so then the judge was confronted the second time with your request for the defense of justification, which the judge said, hey, I heard it the last time, and I am convinced that essentially what was going on was a preemptive strike, as it were, that it doesn't meet justification, so I'm not going to give it. So, and then the judge made certain rulings that didn't allow certain evidence in that was allowed in the first trial based on not giving the justification, correct? Well, more than that. But then just see me out here. So what you do have left is on pecuniary benefit, they do withdraw, ATM withdrawals on, is it Carmarine's, or how do we say that? I'm not sure. I think it's Carmarine. Carmarine's bank account. And then, so if any benefit, legal or illegal, pecuniary or non-pecuniary, is sufficient to meet the ransom reward or otherwise language of the statute, is it really an element of the offense? If anything counts, why does the government need to allege or prove what the benefit is? There has to be a benefit to the accused, and here the defense was that they abducted, the defendants abducted the alleged victim because he was planning to murder them. And I don't think that trying to avoid your own murder qualifies as a benefit. Well, I think to the person that doesn't get murdered, it would be a significant benefit. Well, the money piece of it is there regardless of the motivation for the initial kidnapping. And so leaving aside whether there's a valid justification defense that would have been available, there is no doubt that while this person was lying in the apartment shot and languishing, the defendants were out using the credit card to get cash from the ATM. So how could this possibly not be harmless beyond a reasonable doubt, even if you were correct? Because the government tried that case once and nearly lost. When they tried to establish that this was a kidnapping for ransom, which is what they presented to the grand jury. Well, we don't actually know why exactly what happened, and the first trial is irrelevant to our determination about the second trial. The evidence is different. The first trial was an interesting historical artifact, but it seems to me that the only thing in front of us is the second trial. Well, the evidence was very different because based on the court's ruling that ransom or reward or otherwise is not an element, it completely excluded every aspect of the defense case, including the opportunity to cross-examine the alleged victim about his plot to murder Mr. Edzemian. But that has nothing to do with the fact that they used, that they took money from his banking account. That came from the first trial, too. That wasn't in the second trial. The government chose not to put on any, they specifically told the trial judge, and I will qualify that statement by saying I think some of that evidence may have come in. There was some evidence about that. But I believe it was Mr. Dugdale specifically told the trial court before the retrial, we're not going to put on any evidence as to benefit because it's not relevant. And so the first trial is where all this evidence came out and we had a hung jury leaning toward acquittal. Well, it was 6-6 as to one and as to Mr. Gibson, it was 5-7. Well, it was 7-5 for acquittal as to the kidnapping is my recollection. At least that was the representation by trial counsel. And just so you know, you're using your co-counsel's time because the total time is for both of you. So if you want to leave him some time, you will need to do that. I understand. I think I have 13 minutes left. Total for both of you. Total for both of you. No, I understand that. Okay. It's up to you how you want to divide it. And you said you wanted to use eight minutes. Eight minutes and then four. Right now. And you started at, what, 20? Right. And now you're down to 13. So you've used seven minutes. Right. Okay. That's what I thought. So I'd like to, I guess, pose a hypothetical. The government's interpretation of the statute would make any unlawful arrest by law enforcement or the law enforcement officer called in for backup using a telephone would make that unlawful arrest a Federal kidnapping. That is the logical reading of the government's interpretation that ransom or reward otherwise is not an element of the offense. That just can't be. This is ---- So you're saying purpose has to be something unlawful. Purpose is, well, it doesn't have to be unlawful. It may not take much to prove it, but it has to be alleged and it has to be proved. And it has to be submitted to the jury for their determination on that element. And it wasn't here. And I see that I've gone by eight minutes. You better sit down because otherwise you're taking your co-counsel's time. Thank you. Good morning, Your Honor. I just have a question. Yes. So you're giving him all the rebuttal time before the clock starts? Yes, Your Honor. So then when it gets to four minutes ---- I may ask for a minute of rebuttal. Well, but you don't get, if, well, there'll be, if you leave it down to four minutes, that's, otherwise you have nothing left after. Very well. You need to, okay. Okay. I appreciate that. Because people, when it clocks down and they think when it goes up, they've gone into overtime and they think we're giving them extra. Okay. Thank you. Your Honor, I am going to address principally the argument with regard to justification as it applies to my client, the appellant Gemmian. The first ---- The piece of it I would like you to talk about is the no legal alternative question, because if your client believed, whether rightly or wrongly, that he was the victim, there must have been other alternatives to kidnapping. Yes? He testified, Your Honor, that he did not go to the police because he thought it would be a futile effort. What he did do ---- Okay. Continue. I'm sorry. I'm sorry, Your Honor. No, go ahead. What he did do is he stayed in Russia for five months. He came back here. He stayed in the van for 20 days, not being with his family. He called the alleged victim, spoke to him. The alleged victim, our client testified, did not deny the plot. He called the alleged victim's father, couldn't reach him. He reached out to a friend to call the alleged victim to call off the plot. A government witness, I believe, testified that the FBI had no jurisdiction in Russia, where the plot was, in fact, hatched. Our client found out about the hatch ---- I'm sorry, about the plot in Russia when he was told that there was a contract out on him. But still, just to get to the point of it, so he comes back. Yes. Okay. He doesn't go to the police. There's no evidence that he went to the police and they said, we won't help you. I mean, you see cases all the time where the police send people in with wires on plots, you know, murder plots, and that, you know, and no disrespect for any of the people here, but, you know, the police all the time deal with complicated drug dealers where, you know, they're both drug dealers or, I mean, someone could look at this and say that there's an organized crime component to it. They don't, you know, they don't say because someone is involved in organized crime that they can't be a victim of a crime because they frequently are. The appellant, Your Honor, in good faith testified that he felt that it was an act of futility to go to the government and tell the government the Russian mafia in Russia has put out a contract out on me. And I think it bears the truth because I don't think the FBI could say, and they did not say at trial, that they had jurisdiction over that. Well, no, they don't, but they have jurisdiction here. Yes, they do. Now, he felt under the circumstances that the best thing he could do is meet the alleged victim, tape record him, confirm and verify that there's a plot, and then he would have a basis to go to law enforcement. That didn't work out because at the time he met the alleged victim, and the plan was to record him, when he met with him, a third party was there, started shooting, and wounded the alleged victim. Yeah, but he didn't meet the victim at the Cheesecake Factory. He met him in the garage. That's correct, Your Honor. And the victim's parents with a taser and a baseball bat. And after surveilling him. Well, that's correct, Your Honor, and I think he was there to protect himself. Well, where's the end? I mean, he put himself into the position of harm by, as Judge Gilman's questions demonstrate, if he had really wanted to just talk to him, they could have met at a public place and talked about it. It seems to me that there's no real showing of imminent harm. This is out there somewhere. I mean, this comes up a lot in domestic violence cases where you'll see someone who eventually kills their spouse, and sometimes there's justification because there's an immediate harm, and sometimes it's considered sort of premature or revenge, and then there is no justification defense. And what I fail to see here is the imminence of the harm rather than just a general harm that's out there. That was the argument of the government, Your Honor. It's one of the elements. One of them. And the Court adopted that argument. But it flies in the face of the Gomez case. In the Gomez case, this Court said you don't have to have a gun pointed to the defendant's head. That's not required. And in Gomez, I believe, the defendant testified and he felt he was under direct threat, that he had received a death threat, which was never verified, never substantiated. Now, he went to the police. He did. In that case, the Court specifically found that he had not recklessly placed himself in a situation in which he would be forced to engage in criminal conduct. And that seems to be the opposite of what happened in this case. Well, the Court did not base its denial of the justification defense on that element. They've ---- But we have to affirm if the ruling was correct for any reason that was apparent from the record. So if you're right about immediacy, but you're wrong about other things, then you still don't win. I understand that. We need all four elements to be satisfied. And what I'm saying is that he did not deliberately, respectfully place himself in a reckless situation because he did not go there in order to, in fact, attack the alleged victim. And if the Court had believed ---- well, let's just say if the Court had ---- because the Court had the benefit of the other trial. The Court ---- in the other trial, the Court said, I'm going to hear the evidence before I decide whether I'm going to give justification, heard all the testimony and then said no. So this time in the motion in Limoney, the Court had a real broad perspective. If, let's say, the Court had believed your client and said ---- and could have said, well, I don't think, yeah, even though it wasn't the best idea, he didn't do it with the idea to put himself in harm's way. The Court ---- if the Court had believed your client, the Court could have given that and then we'd still be reviewing it for the same thing. But obviously the Court looked at all of it and said, well, I don't believe that was your only alternative. I don't ---- I believe you put it, you know, based on what I'm hearing. And so that makes it kind of a tough rock to push uphill for you. Your Honor, the thing that bothers me particularly about this case, same trial judge in both cases, in the first trial, my client, the appellant, testified in good faith about the justification defense. He felt in good faith he would have that defense. So he laid himself out. He said, yes, I did take this alleged victim. I did hold him. I did these things. But the reason I did it is because of one, two, three. What happened in the second trial is that the judge did not give the justification defense. The judge didn't promise going into it, the judge didn't promise you getting the justification. I understand that. You had to try your best case. But what happened in the second trial, he didn't get justification in the first trial. What happened in the second trial is that his prior testimony was reread so that he had admitted doing all these things, but it never came out to the jury. He did it because he felt he was justified. And finally, defense counsel in that case, the second trial, was not able to cross-examine the alleged victim in terms of the murder plot. So his entire defense was eviscerated. It was almost like a directed verdict, that second trial. And I would say that respectfully, that's what happened. Counsel, you're down to three and a half minutes for your side. Yes. Thank you very much. Thank you. Thank you. Good morning, Your Honor. May it please the Court, Robert Dugday on behalf of the United States of America. I will lead by addressing the justification argument, although I think the Court's  probably, this is my sticking point, that I'd like you to get to this. I understand not giving the justification instruction because there are some problems here, but tailoring the second trial to leave out large parts of the evidence that can't then be explained, it sort of sanitized it to a point and tailored it to what you wanted to do, in the sense that I could see the jury being kind of confused about. I mean, it really didn't tell the story. The first time maybe told too much of the story. The second time, it seemed very, you know, it was tailored in a way that you didn't know why people did what they did. I understand that, Your Honor. These were obviously two very different trials. But the defense is not allowed to put on any defense it wants unless it can support that defense. And it was the elimination of the justification defense that made those trials so different. But that was the correct decision by Judge Wynn. But the plot that they did this, okay, it may not be a justification for why you get the justification defense or the instruction. But the fact that he thought that there was a plot to kill him and all of that wouldn't, because kidnapping has a mental, it's got an intent component to it, right? That is correct. And if you eliminate everything about, he never even got, there was never anything about that, right? And that was a lot of the reason that he did it. It may have been, but it was, first of all, it was an improper purpose. And it was improper belief. The defendant's subjective belief as to this justification defense, as this Court had recognized, is not relevant. It's an objective test. Well, couldn't that be a benefit? If you kidnap someone because you didn't want them to kill you, couldn't that be a benefit under the statute? Well, that is, I will get to that with the jury instruction issue. And I think the Court's question on that was absolutely correct. There's no question there was a benefit here at the end of the day. The defense admits there was a benefit. It was an improper purpose for which he kidnapped him. There's no question there was a benefit. So what did the jury have at the end of this? If the instruction was wrong, what did the jury have at the end of, you know, what did the jury have before it that could make it harmless? Sure. Well, among other things, there was the ATM withdrawals. That was a benefit that the defendants received as a result of the kidnapping. We know that they went around from ATM to ATM after obtaining the victim's financial information. There was a benefit from the moment that he grabbed him after he was shot and almost fatally wounded, where the defendant himself admitted that he took him away at that point in time to avoid being caught and blamed for the kidnapping. That is a benefit. There are cases where the transportation of a victim of a kidnapping to a different place to avoid law enforcement is a benefit. So those are two just right off the bat as far as what the second trial, what the second court heard. So I guess to answer the Court's questions here, first of all, there were different trials, but that's because the justification defense was properly excluded by Judge Winn, who of course heard this whole historical artifact, this first trial that happened, and came to the correct conclusion that the defendant did not meet, by even showing a scintilla of evidence, two of the prongs of the justification defense. And, in fact, there were more prongs, as Justice Graber has noted, that he recklessly put himself in this situation, too, as a result of abducting the victim here, armed with two thugs with him, a taser and a bat, confronting a victim who didn't even know that the defendant was in town and in the country, who didn't even know where the defendant lived. That's in the record at GER 418 and 419. Which reduces the imminence. Of course. So the legal, the no reasonable legal alternative is not even a close call here. There is no court, this court or any other court, that has held that a defendant is excused from attempting to go to the police to solve a problem like this because he believes it might be futile. That's a defendant who takes the law into his own hands. Instead, what the law is, is that a defendant has to make an attempt to report the crime to the police. The only service... With Captain Ingomez, I believe. In Gomez, it happened repeatedly. Yeah. For the defense to embrace Gomez and say this is like that case, that's a complete misreading of the case. In Gomez... But see, by eliminating all this evidence, I know why you did it. And so it eliminated the chance for jury nullification without it. But it also told a different story. It may have. But again, what it precluded... And I'm bothered by the fact of making a crime something that it's not exactly. Well, this story may have been relevant at sentencing, for instance, the purpose behind the kidnapping. But if it really was, even though it doesn't entitle you to the justification, but that the whole reason is that you're going to make sure that you're going to get him before he gets you or make sure that you thwart that, none of that came out in the second trial, right? That is correct. But for good reason. Again, I'm sure this Court doesn't want to create a precedent where we have two opposing sides in a potentially violent conflict and the law is let's just go at each other. You can go get him before he gets you, and that provides a proper defense. Well, and that's why you don't give... That's why the law doesn't provide for a preemptive strike. There isn't any instruction out there. There aren't any cases I'm aware of that said you can get them before they get you. You can get the jump. Correct. And so that's for the justification. But if a person's intent is part of it, can't they just tell their story why they did it? And then you argue, well, okay, that may have been why he did it, but there's no...  There's no legal, you know... But what you worry about is you have perhaps not... You have people that one is not necessarily more sympathetic than the other, and that there's always a concern as a prosecutor that people are just going to say, well, leave these people to their criminal enterprises and walk away. Of course. And so I know why you did it, but the practice and the ruling... I mean, the defense is not allowed to nullify, which was what happened in the first trial. There was an attempt to do it in the second trial, which failed, obviously. But, look, Mr. Barks talks about how this was like a directed verdict. And that's the plain fact for why that is so is because the defendant was guilty of kidnapping. He was guilty of seizing a monthly seizure. Well, he admitted everything in the first trial, so then that all came in in the second trial. So he essentially admitted basically all the elements of the offense and then did it. But he didn't get justification. That is correct. And, again, I'm not exactly sure what defense thinks the court should do about that. The defendant took the stand without a guarantee that he was going to get a jury instruction, without a guarantee that this defense was available to him. It was the defendant's choice, informed by counsel, to do this. No, I told him that. I don't disagree with that. And, again, so, again, I don't know where that leaves the defense here. So, look, I don't want to beat a dead horse on the justification issue. There were obviously legal alternatives. How about at the time that the shooting occurred? That might have been a nice time to go to the police and say, hey, this guy, this victim, who I'm not going to take to the hospital, make sure that he almost doesn't die like he did, just got shot by somebody who's at large with a gun, who's after me. I think that would have gotten the attention of law enforcement. And the one who did the shooting was the victim's bodyguard, right? Well, they say it was his bodyguard. Relative or? It was an 18-year-old kid with a gun. Well, he hadn't been training at the range and doing his qualifications every four months or something. So the shooting didn't go well. But he couldn't shoot straight. He shot his victim in the rear end. That is true, Your Honors. And I think it's a good point just to talk about some of the hyperbole here. They classify this person as an assassin for the Russian mafia. I mean, it's a 9-year-old kid with a gun who shot the supposed boss that he had there. I mean, if these are assassins for the Russian mafia. Well, don't denigrate the possibility of someone that age being pretty deadly. There is, certainly. Any time somebody has a gun, that is a possibility. Right. I'd appreciate your turning to the question of the instruction, because the instruction, the standard model instruction includes the verbiage that was omitted. And it's a curiosity to me, if nothing else, as to why that was not given in the normal manner. Yes, Your Honors. It doesn't necessarily mean it's error, but it does raise a red flag when it isn't the standard instruction. Of course. Well, as this Court noted in the United States v. Warren, the model jury instructions don't control. It's this Court's precedent that controls. So the fact the model jury instruction wasn't given under Warren doesn't have any significance. But what the judge did, what Judge Winn did, is give the instruction that is authorized by the Gwani case, G-A-W-N-E. I may be mispronouncing it as well. It plainly states in Gwani that purpose is not an element of federal kidnapping. And, quote, the true elements of the offense of a federal kidnapping are an unlawful seizure and holding followed by interstate transportation. So what the Court did was what was authorized by this Court in this regard. So Gwani has not only the law in the circuit never overruled. There are two cases subsequent to Gwani. I believe it's Bradshaw and Sneezer from 1982 and 1992, which reaffirmed the holding in Gwani. So what is the statute that they were charged with violating? What are the elements of that? Well, according to Gwani, it is that there would be an unlawful seizure and holding. But when they read the charge and when you said charged with such and such and these are the elements, what was it? Well, the jury gave the instruction under Gwani. But the statute itself does include after the term hold, which is the operative term, for ransom or reward or otherwise. And the Supreme Court that has analyzed it said this or otherwise opens up a world of possibilities. It could be pecuniary or non-pecuniary. And as a result of that, what Gwani and other courts have said is that purpose is not an element. So the defendant, again, the defendant's unlawful purpose, what the Court's questions were giving to beforehand, his intent in this regard, what his reason was for the kidnapping, it's not an element of defense. It's not relevant what his purpose was. But what's your answer to the question? I'm sorry, go ahead. I'm just curious. Mr. Lemon points out under your theory, if the police make an illegal arrest and bring the person to jail, why isn't that a federal kidnapping? I mean, because in that particular case, there is no unlawful holding in that case here. Well, it's an unlawful arrest and there's no probable cause. Well, if it's an unlawful arrest, it's an unlawful holding. And I guess the issue is on the benefit issue. If you look to the benefit issue, the defense counsel now points out, and this goes to the harmless error issue. If the Court, in fact, reads in from Gwani that there has to be a benefit here, as the Court has pointed out, it's harmless error here. There clearly was a benefit here. So what was the instruction? What instruction? How was the jury instructed the first time? Did they do the whole thing? Correct. The jury was instructed, in light of especially the case that was this justification defense that was proffered at that point in time, ultimately not instructed on, the jury was instructed pursuant to the nice circuit instruction. The issue that the Court – I mean, the Court had to confront the issue of how to deal with this issue on – in the second trial with this unlawful justification defense the defense wanted to offer and how to address that issue properly. So were you the one that asked to delete the language or did the Court on its own? Was it sua sponte? I know they objected. No. The government made this request. The government made this request, cited Gwani. The Court followed Gwani, gave the instructions of what that Court says are the true elements of the offense of federal kidnapping, namely the seizing and holding and then the instrumentality of interstate commerce being used, all of which were proved beyond a reasonable doubt by the defendant's own admissions. That is troublesome. I mean, in a sense, I could see in theory that an unlawful arrest would be than a kidnapping. If you have no benefit requirement or element of instruction, it's just an illegal seizure and an illegal holding of someone against their will, we could have a lot of police cases under – charged under federal kidnapping. I'm the chief of the criminal division. I don't think we're going to open up our window to start filing those cases. But I do understand that point. But I also understand that Gwani is the law in the circuit and its recitation of what the true elements of kidnapping are. And, again, even if one accepts reading in this benefit provision. But if the Supreme Court – and there's a case, United States v. Healy from 1964, that says the phrase or otherwise means some benefit. Well, what Healy had was a rejection of the purpose-based limitation of the statute. And that – Healy was the case, I believe, where there was a hijacking from – somebody hijacked an airliner from Florida to Cuba. And the argument was that there was – this was not done for pecuniary – a pecuniary purpose. It was done for some other purpose. And what the Supreme Court essentially said is this or otherwise language, it encapsulated. It doesn't – when the statute was changed, when the federal kidnapping statute was changed to include the or otherwise language, that essentially opened up the door for all potential purposes. So there is not a purpose-based limitation on the statute. I think that this is what Healy essentially stands for. But they didn't say it was just total surpluses, the way Gwani said it. Well, Gwani – I think Gwani is consistent with that. And if the Court looks at United States v. Chapman, which is another Supreme Court case, what Chapman does is when it looks at this language, this for ransom, reward, or otherwise, it emphasizes that that is what the Court – what a jury may focus on to prove the unlawful holding. That is – that is – that is essentially – what Gwani says, it's not surplusage. I mean, the defense counsel is wrong in this point to say it's meaningless. It's not meaningless, because the thrust of this ransom, reward, or otherwise language is to convey the requirement that the victim had to have been held against his will unlawfully, which, of course, is what we had in this particular case. There's no question that Mr. Kamrai and the victim in this case didn't consent to being abducted, held against his will, almost to the point of his death. I see I have four minutes left. I'm not sure if the Court has any other questions. If you would like the government to address the other issues in the brief that were not addressed by the defense. If you would, I do have four minutes left. I have no other questions. Judge Gilman? Judge Callahan? I think not. Thank you. Thank you. Thank you, Your Honor. I'd like to pick up where government counsel left off with respect to what Ghané actually says. Ghané actually says, and I'm quoting, this does not mean that the phrase, quote, held for ransom or reward or otherwise, end quote, is surplusage. And that is, I don't have the page side, but that's at the end of the opinion. It goes on to say that the word to be emphasized is held. It does not say that ransom or reward or otherwise is surplusage. And counsel says that otherwise opens up purpose to a world of possibilities, and that may be true, but the Supreme Court has never moved off of the proposition that it means some benefit to the accused. Counsel, there are cases from other circuits scattered around that come to a similar conclusion as Ghané or however we pronounce it. In slightly different contexts, there's at least one from another circuit that says that the omission of this phrase from an indictment doesn't matter because it's, since kidnapping for any purpose at all is illegal, so it doesn't have to be in the indictment. There's another one that says that the third element is holding, not any benefit, and so, again, it doesn't have to be in the indictment. There seems to be more out there than just this one very old case of ours. What do you do with those cases? Well, I think, and I outlined most of this in the reply brief, and I'm going to run out of time, but every one of those cases, or almost every one of those cases, dealt with a plain error challenge to an indictment, typically on a habeas review, where the court said this issue wasn't properly preserved, the indictment doesn't necessarily have to have it if you're going to plead guilty to it. That's not what happened here. Here, a trial court refused to instruct over-objection. This is a unique case. This has never happened before. But there's a lot of broad wording in those cases about what is and is not required and what is and is not surplusage and what is and is not an element of the crime. And so it may be that the factual context, it is different because it deals with the indictments, but it seems there's a trend there. I think that's limited to the context of those cases, which is not what happened here. But I'd like to briefly address harmless error, which, first of all, the government made a very late Brady disclosure here. The defendants moved for a new trial, and in denying that motion, the trial court expressly hinged her denial of that motion on her being right. Now, that ransom or reward or otherwise is not an element. She said, whether those were all the essential elements of the crime or not, I understand there is a dispute as to that. But if the court is correct and correctly instructed the jury as to what the elements of kidnapping are, then essentially there's been an admission as to each and every one of those elements. So the jury learning that Mr. Karm Ryan was even more of a fraudster than he admitted on the stand would not have made a material difference in this case. That's at ER 481. So the trial court is conceding that if she's wrong about the elements of the offense, it should come back because of the government's Brady violation. Additionally, the court specifically found that she was going to exclude all of the defense case because ransom or reward or otherwise is not an element. This could not possibly have been harmless. Her decision to remove everything that the defendants wanted to present and to completely preclude the cross-examination of Karm Ryan about being, number one, a Russian mobster and, number two, plotting to murder at Zinnian was all excluded because of this ruling that ransom or reward or otherwise is not an element. This could not possibly have been harmless. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of all counsel. It's been very helpful to the court. With that, we are adjourned for this morning's session.
judges: Gilman, Graber, Callahan